```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                CLARKSBURG
```

**JUDY MOORE,**

    **Plaintiff,**

**v.**                                                         **Civ. Action No. 1:19-CV-138**
                                                                        **(Kleeh)**

**CITIFINANCIAL, INC.,**
**CITIFINANCIAL CREDIT COMPANY,**
**BAYVIEW LOAN SERVICING, LLC,**
**U.S. BANK NATIONAL ASSOCIATION,**
**MF LLC PASS-THROUGH TRUST,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS [ECF NOS. 3, 6]**

Pending before the Court are two Motions to Compel Arbitration and Stay Proceedings [ECF Nos. 3, 6]. For the reasons discussed below, the Court grants both.

                       **I.    PROCEDURAL HISTORY**

On July 18, 2019, this action was timely removed to the Northern District of West Virginia. ECF No. 1. In the Complaint, Plaintiff Judy Moore ("Moore") asserts nine (9) causes of action: (I) Illegal Mortgage (Lender/Holder/Servicer), (II) Common Law Contract Defense of Unconscionability (Lender/Holder/Servicer), (IV) Fraud (Lender/Holder/Servicer), (V) Action to Quiet Title (Holder/Servicer), (VI) Unjust Enrichment (Lender/Holder/Servicer), (VII) Violations of the Real Estate

Settlement Procedures Act (Servicer/Holder), (VIII) Breach of Contract (Holder), (IX) Tortious Interference with Contract (Servicer), and (X) Misrepresentation (Holder/Servicer).[1] The claims relate to the origination and servicing of a home-secured mortgage loan. On July 24, 2019, Defendant CitiFinancial Credit Company ("CitiFinancial") filed a Motion to Compel Arbitration and Stay Proceedings. ECF No. 3. Defendants Bayview Loan Servicing, LLC ("Bayview") and U.S. Bank, National Association, MF IIc Pass-Through Trust ("U.S. Bank") joined the motion. ECF No. 6. The motions are now ripe for consideration and the subject of this order.

## II.   FACTUAL BACKGROUND

Moore is a 73-year-old woman who lives at her home at 3909 Webster Pike, Grafton, West Virginia. See Compl., ECF No. 1-1, at ¶ 1. In June 2001, Moore entered into a home mortgage in the amount of $33,000.00. Id. ¶ 5. Around November 2003, Moore refinanced and entered into a home-secured loan with CitiFinancial, which increased Moore's mortgage to $41,890.50. Id. ¶¶ 5-7. On or around January 6, 2004, Moore again refinanced her home and increased her home-secured financing, leading to a home-secured loan of $44,049.78 with an interest rate of 8.99% that accrued daily. Id.

---

[1] It appears that Count III is missing.

¶ 16. Moore did not have an attorney present during the loan closing. Id. ¶ 114.

On January 6, 2004, Moore's then-husband, William E. Walter ("Walter"), entered into a *Disclosure Statement, Note and Security Agreement* (the "Loan Agreement") with CitiFinancial. See ECF No. 3-1. In the Loan Agreement on page 3, a section labeled "Arbitration" provides that "Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference." Id. at 3. Walter initialed and signed the Loan Agreement on page 1, initialed it on page 2, and signed it on page 3. Moore signed the Loan Agreement on page 3 as a nonobligor (signing as Judy Walter). Moore executed the Loan Agreement just below a paragraph headed "SECURITY INTEREST OF NONOBLIGOR." This section provided:

> [Walter] only is personally liable for payment of the loan. [Moore] is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by [Walter] in payment of this loan.

Id.

The Loan Agreement was secured by real property that was owned, in part, by Moore. Moore also executed a *Deed of Trust* pledging her ownership interest in certain real property as security for the Loan Agreement. See ECF No. 3-2. The separate Arbitration Agreement referenced in the Loan Agreement provides:

**ARBITRATION AGREEMENT**

> **THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

See ECF No. 3-3. The Arbitration Agreement provides that "You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement."[2] Id.

---

[2] The terms "You" or "Your" are defined as "any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives." Arbitration Agreement, ECF No. 3-3. The terms "We" or "Us" or "Our" refer to "the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers . . . ." Id.

In a section titled "Agreement to Arbitrate Claims," the Arbitration Agreement provides:

> Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator," and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control any inconsistency between the Rules of the Administrator and this Agreement.

Id.

In a subsection entitled "Special Acknowledgements," the Arbitration Agreement states that "a court and/or jury will not hear or decide any Claim governed by this Agreement[.]" Id. That section also states that funding for the Loan Agreement was coming "in whole or in part by sources outside" of West Virginia, "which will involve interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1, et seq., as amended[.]" Id. Finally, the Arbitration Agreement provides:

> **READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

Id. Walter and Moore initialed page 1 of the Arbitration Agreement and signed page 2.

### III. DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court of the United States has held that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995). "While the district courts are to apply 'the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA,' the courts must also apply the ordinary state law principles regarding the formation of contracts, such as the 'validity, revocability, or enforceability of contracts generally.'" Minter v. Bayview Loan Servicing, LLC, No. 5:17-CV-185, 2018 WL 607230, at *3 (N.D.W. Va. Jan. 29, 2018) (citing Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013)).

In order to compel arbitration, a party should establish:

> (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to

>cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the [plaintiff] to arbitrate the dispute.

Heller v. TriEnergy, Inc., 877 F. Supp. 2d 414, 423 (N.D.W. Va. 2012). Here, only the second prong is at issue.[3] Moore has raised issues of unconscionability and, therefore, invalidity of the Arbitration Agreement. For the reasons discussed below, the Court will not reach the issue of unconscionability and finds that arbitration pursuant to the Delegation Clause is appropriate.

### A. CitiFinancial can enforce the contract because it is a successor in interest.

The Arbitration Agreement provides: "You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement." ECF No. 3-3. The terms "You" or "Your" are defined as "any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives[.]" The terms "We" or "Us" or "Our" refer to "the

---

[3] As to the first prong, a dispute between the parties exists. This is evidenced by Moore's filing suit. As to the third prong, the Loan Agreement involves interstate commerce. See ECF No. 3-3 (noting that "the funding of the [Loan] will come in whole or in part from sources outside [West Virginia], which will involve commerce within the meaning of the United States Arbitration Act"). As to the fourth prong, Moore clearly opposes arbitration, as evidenced by her filings in response to CitiFinancial's motion.

Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, **successors**, and their respective employees, agents, directors, and officers . . . ." Id. (emphasis added).

CitiFinancial Credit Company is a successor in interest to CitiFinancial, Inc. See Corp. Disclosure Statement, ECF No. 5 (writing that "CitiFinancial, Inc. merged with and into CitiFinancial Credit Company"). CitiFinancial attached to its Reply a Certificate of Merger of Foreign Corporation into a Domestic Corporation. ECF No. 16-3. It also attached a certification from the Secretary of State of Delaware that the certificate of merger is true and correct. Id. Because CitiFinancial Credit Company is a successor in interest, it can enforce the contract.

### B.  The Delegation Clause must be enforced.

The Supreme Court of Appeals of West Virginia has recognized that "[i]n their contract, the parties may agree that questions about the validity, revocability or enforceability of an arbitration agreement under state contract law will be delegated from a court to an arbitrator. 'Because the parties are the masters of their collective fate, they can agree to arbitrate almost any dispute – even a dispute over whether the underlying dispute is subject to arbitration.'" Schumacher Homes of Circleville, Inc. v.

Spencer ("Schumacher II"), 237 W. Va. 379, 389, 787 S.E.2d 650, 660 (2016). The court further wrote:

> [U]nder the FAA and the doctrine of severability, where a delegation provision in a written arbitration agreement gives to an arbitrator the authority to determine whether the arbitration agreement is valid, irrevocable or enforceable under general principles of state contract law, a trial court is precluded from deciding a party's challenge to the arbitration agreement. When an arbitration agreement contains a delegation provision, the trial court must first consider a challenge, under general principles of state law applicable to all contracts, that is directed at the validity, revocability or enforceability of the delegation provision itself.
>
> Under this rule, **if the trial court finds the delegation provision to be effective, then the case must be referred to the parties' arbitrator who can then decide if the arbitration agreement is invalid, revocable or unenforceable**. Conversely, if the delegation provision is ineffective on a ground that exists at law or in equity for the revocation of any contract, then the trial court may examine a challenge to the arbitration agreement.

Id. at 389-90, 660-61 (emphasis added).

Under the FAA, there are two prerequisites for a delegation clause to be effective. First, the language of the provision "must reflect a clear and unmistakable intent by the parties to delegate state contract law questions about the validity, revocability, or enforceability of the arbitration agreement to an arbitrator.

9

Second, the delegation provision must itself be valid, irrevocable and enforceable under general principles of state contract law." Id. at 392, 663. When "the plaintiffs' unconscionability arguments focus[] on the arbitration agreement as a whole and do not specifically or necessarily challenge the delegation provision, 'the unchallenged delegation provision grant[s] the arbitrator exclusive authority to determine whether the arbitration agreement was unconscionable.'" Minter, 2018 WL 607230, at *8 (citation omitted).

Here, the Arbitration Agreement provides that "You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement." ECF No. 3-3. A Claim is defined to include: "The [Loan Agreement], this Agreement, or the enforceability, **or the arbitrability of any Claim pursuant to this Agreement**, including but not limited to the scope of this Agreement and any defenses to enforcement of the [Loan Agreement] or this Agreement[.]" Id. (emphasis added). The Court finds that this provision evidences a clear and unmistakable intent by the parties to delegate to the arbitrator any questions about the enforceability of the Arbitration Agreement. Moore writes that the Delegation Clause is unconscionable, but her arguments challenge the enforceability of the Arbitration Agreement as a whole.

Although Moore endeavors to create the impression that a separate argument or challenge is raised on the Delegation Clause, her response merely attaches reference to that clause to her attack on the entirety of the Agreement. For the reasons discussed herein, those issues have been exclusively reserved to the province of an arbitrator by the express terms of the parties' Agreement. Therefore, this action must be referred to arbitration to determine the enforceability of the Arbitration Agreement.

## IV.  CONCLUSION

Overall, CitiFinancial has established (1) that a dispute exists between the parties, (2) that there is a written arbitration agreement that covers the dispute, (3) that the Loan Agreement involves interstate commerce, and (4) that Moore refused to arbitrate the suit. For the reasons discussed above, the Motions to Compel [ECF Nos. 3, 6] are **GRANTED**. The Court finds that Moore is not entitled to further discovery or an evidentiary hearing before arbitrating her claims.[4] The Court **ORDERS** Moore to arbitrate pursuant to the Delegation Clause. This action is **STAYED** until such arbitration has been had in accordance with the terms of the agreement.

---

[4] See Minter, 2018 WL 607230, at *8 (writing that "because the question of unconscionability is properly before the arbitrator, any order of limited discovery in this matter would be inappropriate, as this is not the proper forum for the issue").

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 4, 2020

*/s/ Tom S. Kleeh*

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE